# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELCOMMERCE.COM, INC., | : | CIVIL ACTION |
| Plaintiff-Counter-Defendant, | : | |
| | : | |
| v. | : | |
| | : | NO. 09 - 4458 |
| SAP AG and SAP AMERICA, INC., | : | |
| | : | |
| Defendants-Counter-Plaintiffs. | : | |

**DuBOIS, J.**                                             **August 27, 2010**

# **M E M O R A N D U M**

## **I. INTRODUCTION**

This is a patent infringement case. In its Complaint, plaintiff, elcommerce.com, Inc., alleges that defendants, SAP AG and SAP America, Inc. (collectively "SAP") willfully infringed United States Patent Number 6,947,903 (the "903 patent"). Defendants filed Counterclaims seeking declaratory judgments of non-infringement, invalidity and unenforceability.

Presently before the Court is Defendants' Motion to Compel Pre-Suit Communications. By Order dated August 12, 2010, the Court denied the motion as it relates to unspecified pre-suit communications between elcommerce and unidentified law firms, and directed plaintiff to submit to the Court for in camera review the only documents that were specifically identified in the motion: charting documents referred to in document EL00037887, an attachment to an e-mail labeled EL00038856, the documents referenced in elcommerce's privilege log as documents number 56, 58, 79, 85, 86, 87, 98, 103, and 104.

In a letter dated August 18, 2010, elcommerce stated that the attachment to the e-mail labeled

-1-

EL00038856 could not be found. If that document is found, elcommerce shall provide it to the Court for in camera review. That same letter asserted that the charting documents referenced in document EL00037887 and documents 85 and 98 have already been produced to defendants. SAP responded by letter dated August 20, 2010, stating that those documents had not been produced. In view of defendants' response, duplicate copies of the charting documents and documents 85 and 98 shall be provided to SAP by elcommerce.

The Court has reviewed in camera the remaining documents. For the reasons set forth below, the Court denies defendant's motion as it relates to documents 56, 58, 79, 86, 87, 103, and 104.

## II. BACKGROUND

Elcommerce's Complaint alleges that SAP willfully infringed patent 903. Seeking to discover the evidentiary basis of this allegation, SAP sent to elcommerce an interrogatory asking for "all facts and circumstances in support of elcommerce's contention that SAP's alleged infringement of the '903 patent is willful, including all facts and circumstances regarding the alleged willful infringement prior to the state elcommerce filed its Complaint." (Pl. elcommerce.com, Inc.'s Resps. to Defs.' Third Set of Interrogs. (13-15) 1 (hereinafter "Interrog. No. 13").) Elcommerce served a twenty-five page answer to that interrogatory which referred to documents prepared by elcommerce attorneys and several pre-suit communications with its outside counsel at the law firm Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin"). SAP avers that, by providing this answer, elcommerce has waived the attorney-client and work-product privileges on a wide variety of subject areas, including claim scope, claim validity, infringement by SAP and others, and damages. Elcommerce contends that any waiver is much narrower in scope.

In its answer to SAP's interrogatory, elcommerce explained that it was represented by Mintz

Levin from August 21, 2000 until May 1, 2007. The answer identified several documents and computer discs describing the 903 patent that were provided to Mintz Levin. The answer also described meetings between elcommerce principals and attorneys at Mintz Levin at which the 903 patent, and potential lawsuits against alleged infringers of that patent, were discussed. On June 7, 2006, Mintz Levin returned to elcommerce a portion of the documents and computer discs elcommerce had provided to Mintz Levin. That same day, the law firm of Cooper & Dunham, LLP, filed a patent application on SAP's behalf. That application led to the issuance of patent number 7,426,418, which elcommerce alleges includes aspects of the 903 patent and aspects of statements made by an elcommerce principle at a meeting with Mintz Levin attorneys.

Elcommerce claims that SAP has been a client of Mintz Levin since 2006 and contends that "some information [it] shared in confidence with Mintz Levin was disclosed to SAP and ended up in the SAP patent application filed on June 7, 2006." (Elcommerce.com, Inc.'s Opp. to Defs.' Mot. to Compel Disc. Regarding Privileged Pre-Suit Commc'ns 9.) That is the basis of elcommerce's willfulness claim against SAP.

## IV. DISCUSSION

Elcommerce opposes the production of documents 56, 58, 79, 86, 87, 103, and 104 on the ground that they are covered by the attorney-client and work-product privileges. All of the documents were prepared by elcommerce. Document 56 is a memorandum analyzing SAP's alleged infringement; Document 58 is a chart describing SAP's alleged infringement; Document 79 is a memorandum analyzing potential damages in a patent infringement suit against SAP; Document 86 is a chart describing SAP's alleged infringement; Documents 87 and 104 are the same memorandum analyzing SAP's alleged infringement; and Document 103 is a chart describing SAP's alleged infringement. Elcommerce provided documents 87, 103, and 104 to Mintz Levin, but there is no

evidence that those documents were provided to SAP or discussed in a communication with SAP. There is no evidence that the other documents were ever presented to Mintz Levin or discussed in a communication with Mintz Levin.

Elcommerce has the burden of proving that the documents are covered by the attorney-client or work-product privileges and that it has not waived these privileges. See Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C., 202 F.R.D. 418, 423 (E.D. Pa. 2001). Defendants do not argue that the documents are not privileged. To the contrary, they assume that all of the withheld documents are privileged. (Defs.' Mot. to Compel Disc. Regarding Pre-Suit Commc'ns 6.)

After in camera review, the Court concludes that the documents are privileged. Elcommerce's response to interrogatories waived this privilege as to some documents. The question presented by SAP's motion is the scope of the waiver.

A. **Scope of the Attorney-Client and Work-Product Privileges**[1]

In order to determine the scope of elcommerce's waiver of its attorney-client and work-product privileges, the Court must first review the scope and purpose of those privileges.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Documents covered by the attorney-client and work-product privileges are thus generally immune from discovery. However, the scope of this immunity differs depending on which privilege is asserted. "The attorney-client privilege protects the confidentiality of communications between attorney and

---

[1] The Court applies the law of the federal circuit because the questions of privilege arise from plaintiff's claim of willful infringement, which necessarily involves issues of substantive patent law. See In re Echostar Commc'ns Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006).

client made for the purpose of obtaining legal advice. Genentech, Inc. v. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

The work-product privilege, by contrast, protects "documents and tangible things that are prepared in anticipation of litigation or for trial," but does not protect oral and written communications between client and attorney. See Fed. R. Civ. P. 26(b)(3); In re Echostar Commc'ns Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006). The purpose of the work-product privilege is to promote a "fair and efficient adversarial system by protecting the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent." Echostar, 448 F.3d at 1301 (internal quotation marks omitted). The work-product privilege has two tiers of protection. If a document contains "factual" or "non-opinion" work product, it may be subject to discovery if a party "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(ii). "Core" or "opinion" work product, which consists of "mental impressions, conclusions, opinions, or legal theories of an attorney," is afforded almost absolute protection. See Echostar, 448 F.3d at 1302. The rationale behind this distinction is that "any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes . . . ." Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985) (citations omitted).

Neither the attorney-client nor the work-product privilege is absolute. Both can be waived. When the attorney-client privilege is waived, the "waiver applies to all other communications relating to the same subject matter." Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005). Any waiver of the work-product privilege is not so broad. See In re Seagate Technology,

LLC, 497 F.3d 1360, 1376 (Fed. Cir. 2007) (citing United v. Nobles, 422 U.S. 225, 227 (1975) for the principle that work product waivers should be narrowly construed). Instead, a waiver of the work-product privilege extends only to factual and non-opinion work product. The two questions presented by defendant's motion to compel are thus (1) what is the "subject matter" of plaintiff's waiver of the attorney-client and work-product privileges and, (2) in the case of protected work product, are the documents requested by defendant factual, non-opinion, work product or core, opinion, work product?

### 1. The Subject Matter of Elcommerce's Waiver

Elcommerce's Complaint asserts that SAP willfully infringed its patent, an allegation that, if proved, would entitle elcommerce to enhanced damages. See 35 U.S.C. § 284; Seagate Tech., 497 F.3d at 1368. In a typical patent infringement case, defendants respond to such a claim by arguing that they relied on advice of counsel and were thus acting in good faith. See Seagate Tech., 497 F.3d at 1368-70. When a defendant asserts this defense, it necessarily waives its attorney-client and work-product privileges. Id. At that point, courts must determine the scope of any waiver, balancing the defendant's interest in mounting an effective defense to the claim of willfulness with the concern that defendants might selectively waive the privilege only as it relates to documents helpful to its defense, while asserting the privilege as to documents that weaken its defense—so-called "sword and shield" litigation tactics. Id. at 1369-70; Fort James Co., 412 F.3d at 1351.

Echostar presented this typical fact pattern. In that case, TiVo sued Echostar for willfully infringing its patent. 448 F.3d at 1297. Echostar responded that it relied on the advice of its in-house counsel, thereby waiving its attorney-client and work-product privileges. Id. TiVo then sought production of documents in the possession of Echostar and its in-house counsel prepared prior to the suit, and documents in the possession of a law firm retained by Echostar after the suit was filed. Id.

The district court granted TiVo's motion to compel, stating that the scope of Echostar's waiver of privilege included communications and work-product made before and after the filing of the complaint, whether or not the communications and work-product had been communicated to Echostar. Id.

The Federal Circuit granted Echostar's petition for writ of mandamus and directed the district court to vacate its order granting TiVo's motion to compel. Id. at 1305. In doing so, the Federal Circuit explained that the subject of the waiver concerned the infringer's state of mind. Id. at 1303. Thus, that court ruled that defendant waived the attorney-client and work-product privileges as it related to documents that might "instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." Id. (quoting Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992). "It is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness." Id. In sum, Echostar held that the waiver of the privileges extended only to the subject of willfulness.

SAP argues that the subject matter of elcommerce's waiver is broad enough to include, among other things, claim scope, claim validity, infringement by SAP and others, and damages because the documents contain information on each of these subject areas. The Court rejects this argument for the same reason it was rejected by the Echostar court in the related context of the advice-of-counsel defense: a plaintiff asserting a claim of willfulness by waiving the attorney-client and work-product privileges on that issue does not "give [its] opponent unfettered discretion to rummage through all of [its] files and pillage all of [its] litigation strategies" anymore than does a defendant asserting the advice-of-counsel defense. Id. at 1303.

This case does not present the typical willfulness scenario. In this case, elcommerce avers

that its outside counsel, who also represented SAP, conveyed documents and other privileged information to SAP that SAP then used to infringe elcommerce's patent. In attempting to prove this claim, elcommerce provided detailed information about communications between its in-house attorneys and attorneys at Mintz Levin. Unlike the typical patent case involving a claim of willful infringement, the concern in this case is not that defendant will selectively waive the privileges while asserting an advice-of-counsel defense; the concern is that plaintiff is selectively waiving the privileges to prove its willfulness claim. To the Court's knowledge, this situation is unprecedented.

Nevertheless, the Court finds <u>Echostar</u> instructive. In that case, defendant attempted to prove good faith by waiving the attorney-client and work-product privileges to demonstrate that it believed a court would conclude it was not infringing plaintiff's patent; in this case, plaintiff is attempting to prove bad faith by waiving the attorney-client and work-product privileges to show defendant's knowledge on the issue of infringement. The critical question in both cases is defendant's state of mind.

The Court concludes that elcommerce waived the attorney-client and work-product privileges when it disclosed documents and other communications between itself and its attorneys at Mintz Levin. The disclosure of documents and other communications was made in response to an interrogatory seeking a summary of elcommerce's evidence of willfulness. Following <u>Echostar</u>, the Court rules that the subject matter of the waiver is SAP's alleged willfulness—its state of mind. Any documents provided to Mintz Levin, which Mintz Levin then discussed or conveyed to SAP, are relevant to the issue of willfulness. Similarly, any other communications from elcommerce to Mintz Levin, which Mintz Levin then shared with SAP, bear on the willfulness issue. Accordingly, elcommerce waived the attorney-client and work-product privileges with regard to any such documents and communications.

## 2. The Level of Work-Product Protection Afforded to the Documents at Issue

The work product privilege applies only to documents and tangible things. See Fed. R. Civ. P. 26(b)(3). The documents requested by SAP are privileged attorney work product. Accordingly, even if they fall within the scope of elcommerce's waiver of that privilege, the waiver extends only to factual, non-opinion work product.

In order to determine whether the documents are opinion work product, or less-protected non-opinion work product, the Court must balance two conflicting policies: the policy of preventing sword-and-shield litigation tactics, and the policy of protecting attorney work product. See Echostar, 448 F.3d at 1302. Here, as in Echostar, the line between factual and opinion work product is blurred. In this case, the thoughts and conclusions of elcommerce's attorneys as to whether SAP was infringing its patent are themselves factual work product because, if communicated to SAP, they are relevant to the factual question whether SAP willfully infringed elcommerce's patent. See id., 448 F.3d at 1303.

The Echostar court identified three categories of advice-of-counsel work product, two of which are relevant to the documents requested by SAP:

> (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; . . . .

Id. at 1302. Because the documents in category one were related to Echostar's state of mind, and thus the strength or weakness of its advice-of-counsel defense, they fell within the scope of Echostar's waiver and were subject to discovery. See id. at 1303. The documents in category two were deemed not to be discoverable. In so ruling, the Echostar court explained that the documents in category one were evidence of "a non-privileged, relevant fact, namely what was communicated

to the client," and thus bore on the advice of counsel defense at issue, the documents in category two did not take on this factual nature. Id. at 1304. Documents in category two were not relevant to the advice-of-counsel defense because they represented the legal opinions and mental impressions of counsel that were not communicated to the client. See id.

The parties in this case are in a different position than the parties in Echostar, but that case is still instructive as to which documents relate to the subject matter of SAP's willfulness. Transposed into the facts of this case, Echostar category one consists of all documents provided by elcommerce to its attorneys at Mintz Levin, which Mintz Levin then gave to SAP, or addressed in communications with SAP. Documents in this category are relevant to SAP's knowledge of elcommerce's patent. Documents in Echostar category two in this case consist of documents from elcommerce analyzing the law, facts and trial strategy that were not communicated to its attorneys at Mintz Levin. They therefore have no bearing on SAP's state of mind and are not discoverable.

In summary, the Court concludes that elcommerce has waived the attorney-client and work-product privileges only on the subject matter of SAP's alleged willfulness. Documents protected by the work-product privilege are included in this waiver if they were provided by elcommerce to its attorneys at Mintz Levin and then conveyed to SAP, or otherwise addressed in communications with SAP, because those documents form the basis of elcommerce's willfulness claim. Core, opinion, work product produced by elcommerce attorneys and not provided to Mintz Levin falls outside the scope of elcommerce's waiver.

**B. The Requested Documents**

After reviewing in camera the requested documents, the Court concludes that documents 56, 58, 79, 86, 87, 103, and 104 are all protected work-product. Although elcommerce states that documents 87, 103, and 104 were provided to attorneys at Mintz Levin, there is no evidence that

those documents—or any of the other requested documents—were ever provided to SAP or addressed in communications between Mintz Levin and SAP. On the present state of the record, defendant's motion is denied as it relates to those documents. These documents are not evidence supporting elcommerce's allegation of willfulness—they are not a "sword" used to prove its claim while hiding behind the "shield" of privilege. To the contrary, balancing the policy behind the work-product privilege and the policy against abusive discovery tactics, the Court concludes that these documents—absent some evidence that are relevant to SAP's state of mind—must remain privileged so as to promote a fair and efficient adversarial system. See Hickman v. Taylor, 329 U.S. 495, 511-14, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . . Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.")

## V. CONCLUSION

For the foregoing reasons, defendants' motion is granted as to the charting documents referenced in document EL00037887 and documents 85 and 98, and denied as to documents 56, 58, 79, 86, 87, 103, and 104.